ORIGINAL

Approved: _____
MATTHEW R. SHAHABIAN
Assistant United States Attorney

Before:   THE HONORABLE JAMES L. COTT
          United States Magistrate Judge
          Southern District of New York

------------------------------------- x

**21 MAG 11675**

UNITED STATES OF AMERICA

- v. -

LUCA TRIPPITELLI,

                    Defendant.

------------------------------------- x

: COMPLAINT
:
: Violations of 18 U.S.C.
: §§ 875(d), 1951, and 2
:
: COUNTY OF OFFENSE:
: NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

   JAMMY TAM, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

**COUNT ONE**
(Hobbs Act Extortion)

   1. From at least in or about November 2019 through in or about December 2021, in the Southern District of New York and elsewhere, LUCA TRIPPITELLI, the defendant, knowingly did commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), and did thereby obstruct, delay, and affect commerce and the movement of any articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, TRIPPITELLI obtained money and property from a former romantic partner ("Victim-1"), a health care provider whose business operates in New York and Illinois, by threatening to destroy Victim-1's professional reputation and business.

   (Title 18, United States Code, Sections 1951 and 2.)

**COUNT TWO**
(Interstate Communications with Intent to Extort)

2. From at least in or about July 2021 through in or about December 2021, in the Southern District of New York and elsewhere, LUCA TRIPPITELLI, the defendant, with the intent to extort from a person, firm, association, and corporation, money and other things of value, transmitted in interstate and foreign commerce communications containing threats to injure the property and reputation of the addressee and of another, to wit, TRIPPITELLI sent messages via iMessage and other electronic messaging services to Victim-1 threatening to injure the business and reputation of Victim-1 and Victim-1's spouse ("Victim-2"), when TRIPPITELLI's cellphone was in Manhattan, New York and Victim-1 was in Illinois or outside the United States.

(Title 18, United States Code, Sections 875(d) and 2.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

3. I am a Special Agent with the FBI. This affidavit is based on my personal participation in the investigation of this matter, my conversations with other law enforcement officers, witnesses and others, my review of electronic messages, as well as my examination of reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

Overview

4. Based on my conversations with Victim-1 and my review of records I have obtained from Victim-1, including electronic messages, voice recordings, and bills and transaction records, I have learned that, since at least in or about November 2019, LUCA TRIPPITELLI, the defendant, has been extorting Victim-1. Victim-1 is a prominent health care provider whose practice is located in Manhattan, New York and Chicago, Illinois. Prior to November 2019, TRIPPITELLI was in a romantic relationship with Victim-1 and was living in Victim-1's apartment in Manhattan, New York ("Victim-1's Manhattan Apartment").

5.      After Victim-1's romantic relationship with TRIPPITELLI ended in November 2019, Victim-1 asked TRIPPITELLI to move out. TRIPPITELLI demanded that Victim-1 pay for TRIPPITELLI's new apartment, his cellphone service, and his utilities, or else TRIPPITELLI would ruin Victim-1's business and Victim-1's marriage. TRIPPITELLI's extortionate threats escalated in or about July 2021, when he demanded that Victim-1 start paying TRIPPITELLI $5,000 per month in addition to the lease payments and other expenses Victim-1 had already been paying.

6.      In total, TRIPPITELLI extorted at least approximately $130,000 from Victim-1.

TRIPPITELLI'S Extortion Scheme

7.      Based on my conversations with Victim-1, I have learned the following:

a.      Victim-1 is a health care provider whose practice is located in Manhattan, New York and Chicago, Illinois. At all relevant times, Victim-1 was married to Victim-2. Victim-1 and Victim-2 primarily live in Illinois. Victim-1 stays in Victim-1's Manhattan Apartment when Victim-1 is in New York for work.

b.      In or about November 2019, Victim-1's romantic relationship with LUCA TRIPPITELLI, the defendant, ended. Victim-1 asked TRIPPITELLI to move out of Victim-1's Manhattan apartment. TRIPPITELLI became angry with Victim-1, and told Victim-1, in sum and substance, that Victim-1 needed to pay for an apartment for TRIPPITELLI, pay for TRIPPITELLI's cellphone, and pay for TRIPPITELLI's utilities and various expenses. TRIPPITELLI told Victim-1 that if Victim-1 refused to pay for these things, TRIPPITELLI would destroy Victim-1's professional reputation and would divulge to Victim-2 the extent of TRIPPITELLI's romantic relationship with Victim-1, for the apparent purpose of damaging Victim-1 and Victim-2's marriage.

c.      Victim-1 feared what would happen if Victim-1 did not agree to TRIPPITELLI's demands. Accordingly, Victim-1 leased an additional apartment in Manhattan for TRIPPITELLI to live in. Based on my conversations with Victim-1 and my review of financial and other records provided by Vicitm-1, I know that from approximately in or about December 2019 through in or about December 2021, Victim-1 paid for TRIPPITELLI's rent, cellphone,

utilities, and other expenses, such as his groceries.

8. Based on my review of documents and communications provided by Victim-1, including iMessages, other electronic messages, and financial records, my conversations with Victim-1, and my review of historical cell site data for the cellphone of LUCA TRIPPITELLI, the defendant, which I obtained pursuant to a judicially-authorized search warrant, I have learned the following:

a. In or about July 2021, TRIPPITELLI texted Victim-1 and stated, in sum and substance, that starting August 1, 2021, Victim-1 needed to pay TRIPPITELLI $5,000 per month in cash, in addition to the payments Victim-1 was already making to TRIPPITELLI. TRIPPITELLI told Victim-1 to "FIGURE IT OUT." TRIPPITELLI threatened, in sum and substance, that if Victim-1 refused, TRIPPITELLI would "destroy" Victim-1's business and Victim-1's marriage. For example, TRIPPITELLI threatened to write a press release with what Victim-1 considered spurious claims that Victim-1 improperly disclosed Victim-1's patients' confidential information. At the time TRIPPITELLI sent these text messages, TRIPPITELLI's cellphone was in Manhattan, New York; Victim-1 was in Europe.

b. Victim-1 feared what would happen if Victim-1 did not pay TRIPPITELLI's demand for an additional $5,000 per month. Beginning in or about August 2021, Victim-1 paid TRIPPITELLI $5,000 each month through an electronic payment platform.

c. In or about September 2021, Victim-1 changed Victim-1's credit card number. TRIPPITELLI texted Victim-1 about Victim-1's credit card not working as TRIPPITELLI was unable to purchase groceries using Victim-1's credit card. Victim-1 suggested TRIPPITELLI's groceries instead be deducted from the $5,000 payment that Victim-1 was sending to TRIPPITELLI each month. TRIPPITELLI refused and demanded Victim-1's "new [credit card] fuckin info."

d. After Victim-1 refused to give TRIPPITELLI Victim-1's new credit card number, TRIPPITELLI responded with screenshots of sexually explicit photographs of Victim-2 published on a social media platform (the "Platform") under a pseudonym. TRIPPITELLI then said he was going to comment on the post with, "'Are you [Victim-2's real name], the [spouse] of [Victim-1's real name]?' and im tagging all your friends . . . . Then I'll privately tell [Victim-2] everything about us. Your

choice. You have 5 minutes."

    e. When Victim-1 did not immediately accede to TRIPPITELLI's threats, TRIPPITELLI texted Victim-1 a screenshot of TRIPPITELLI replying to another sexually explicit video of Victim-2 published on the Platform, in which TRIPPITELLI wrote, "Wow is this [Victim-2's real name] [spouse] of [Victim-1's real name]?? Oh my god." TRIPPITELLI then texted Victim-1, "Im gonna keep going on Instagram in 20 min. About to start on IG. Tomorrow your business. All this because of Fresh Direct. [Victim-2] is texting me already awwww. Press release about you ready for Monday."

    f. Victim-1 relented in fear of TRIPPITELLI's threats to Victim-1's professional reputation and marriage. Victim-1 texted TRIPPITELLI Victim-1's credit card number. TRIPPITELLI responded, "Good boy, lets hope you don't upset me again. I took the [social media post] down. It had 900 views already." At all relevant times during this text exchange, TRIPPITELLI's cellphone was in Manhattan, New York; Victim-1 was in Illinois.

    g. On or about November 4, 2021, TRIPPITELLI texted Victim-1 that "Christmas is coming, and your gift will be my flights for Italy that im getting right now. And im being nice." Shortly thereafter, Victim-1 received a notification from Victim-1's credit card company that Victim-1's credit card number was used for purchases on two airlines in amounts consistent with booking flights to Italy.

  9. Based on my personal participation in this investigation and my review of text messages provided by Victim-1, I have learned the following:

    a. On or about December 6, 2021, Victim-1, acting at the direction of law enforcement, texted LUCA TRIPPITELLI, the defendant, and told him that Victim-1 had told the property manager for TRIPPITELLI's apartment building that Victim-1 was thinking about not renewing TRIPPITELLI's lease, which was about to expire.

    b. TRIPPITELLI responded, "Renew my fuckin lease. I am so pissed right now. Email [the manager] now. R u fuckin kidding me. U really looked for trouble today."

    c. When Victim-1 expressed hesitancy about doing so, TRIPPITELLI responded, "Renew my fuckin rent, and PRAY

I don't do something stupid. I am so, so close."

    d. Victim-1 responded, "I've been paying all this money so you don't hurt my marriage or my business," and agreed to renew the lease.

    e. TRIPPITELLI responded, "Good. And by the way you've been 'paying all this money' because you've been a dickhead with me. Me 'hurting your family and your business'? Yes definitely, not physically though. Just by saying the truth. And I have a lot of weird shit to say."

    f. When Victim-1 asked what TRIPPITELLI would say, TRIPPITELLI responded, "Stop playing detective. You really like playing with fire don't you? And then you suddenly get burned and its too late."

    10. I know from my personal observations that, on or about December 6, 2021, Victim-1 was in Illinois. I know from my review of prospective cell site location data for the cellphone used by LUCA TRIPPITELLI, the defendant, which I obtained pursuant to a judicially-authorized warrant, that on or about December 6, 2021, TRIPPITELLI's cellphone was in Manhattan, New York.

11. Based on my conversations with Victim-1 and my review of records provided by Victim-1, I have learned that, in response to the extortionate threats made by LUCA TRIPPITELLI, the defendant, Victim-1 has made at least approximately $25,000 in cash payments, $84,000 in rent payments, and $22,000 in payments for utilities and other expenses to and on behalf of TRIPPITELLI.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of LUCA TRIPPITELLI, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

/s/ Jammy Tam with permission
_____
Jammy Tam
Special Agent
Federal Bureau of Investigation

Sworn to before me this
7th day of December, 2021

_____
JAMES L. COTT
United States Magistrate Judge